**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0135-15T2
            A-0137-15T2

IN THE MATTER OF THE CIVIL
COMMITMENT OF H.S., JR.

_____

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

M.C. and H.S.,

    Defendants.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF H.S., JR., a minor,

    Appellant.

_____

        Argued February 5, 2018 - Decided August 1, 2018

        Before Judges Accurso, O'Connor and Vernoia.

        On appeal from Superior Court of New Jersey,
        Law Division, Morris County, Docket No.
        MRCC00029515 and Chancery Division, Family
        Part, Morris County, Docket No. FG-14-0030-
        15.

        Daniel F. O'Brien, Assistant Deputy Public
        Defender, argued the cause for appellant

H.S., Jr., in A-0135-15 (Joseph E. Krakora, Public Defender, attorney; Daniel F. O'Brien, on the brief).

W. Randall Bush, First Assistant Morris County Counsel, argued the cause for respondent Morris County Adjuster in A-0135-15 (John A. Napolitano, Morris County Counsel, attorney; W. Randall Bush, on the brief).

Maria Emilia Borges, Assistant Deputy Public Defender, argued the cause for appellant H.S., Jr., in A-0137-15 (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Maria Emilia Borges, on the brief).

Susan J. Saraiva, Deputy Attorney General, argued the cause for respondent Division of Child Protection and Permanency in A-0137-15 (Gurbir S. Grewal, Attorney General, attorney; Susan J. Saraiva, on the brief).

PER CURIAM

H.S. is a minor in the custody of the Division of Children and Families at the time of these events, following his removal from his parents in January 2015 in the Family Part matter on appeal under Docket No. A-0137-15. On April 7, 2015, the Division, standing in the shoes of H.S.'s parents, applied to admit him to St. Clare's children's crisis intervention unit for evaluation pursuant to R. 4:74—7A(d)(1) in the action on appeal in Docket No. A-0135-15. Three days later, Municipal Court

Judge John A. Paparazzo[1] held a hearing and entered an order placing H.S. on CEPP [Conditional Extension Pending Placement] status.  For the next four months, Judge Paparazzo and Judge Berdote Byrne, the Family Part judge presiding over what ultimately became a guardianship action, supervised the State's efforts to secure a suitable placement for six-year-old H.S.

On September 9, 2015, H.S.'s CEPP status ended when he was discharged to the Rutgers Children's Transitional Residence, "a residential treatment program for eight seriously psychiatrically impaired children five to ten year[s] of age." Children's Transitional Residence, Rutgers Univ. Behavioral Health Care, http://ubhc.rutgers.edu/services/children_family/ctr.htm (last visited July 18, 2018).  The Rutgers program, a psychiatric community home, offered a higher level of care than that recommended for H.S. but, more important, lacked the focus on trauma services offered by the five-bed Children's Aid and Family Services program where H.S. remained first on the wait list.  That program's singular focus on trauma services was what

---

[1]  N.J.S.A. 30:4-27.15 and N.J.S.A. 30:4-27.2(f) authorize Municipal Court judges to preside over civil commitment proceedings.  Judge Paparazzo has been designated by the Chief Justice to handle such matters.

made it the most appropriate placement for H.S. in the view of his Child Family Team.[2]

In January 2017, H.S. moved from his residential care facility to a resource home.  Eleven months later, H.S.'s resource family adopted him.

In these consolidated cases, H.S.'s counsel in the commitment proceeding appeals from an August 4, 2015 Family Part order denying his request to vacate a June 26, 2015 consent order declaring that H.S. not be moved from St. Clare's until further order of the court.  Counsel also appeals from the commitment court's August 17, 2015 order continuing H.S. on CEPP status through a review hearing on August 28.  His main contention is that "the Family Part improperly interfered with the jurisdiction of the Civil Commitment Court" by entering the June 26 consent order, thereby unlawfully prolonging H.S.'s confinement in a psychiatric hospital on CEPP status in violation of the constitutions of the United States and the State of New Jersey and State law.  H.S.'s counsel also argues

---

[2]  "The CFT [Child Family Team] is the mechanism by which all assessment and planning for a youth and their family are accomplished.  It drives all care management activities" by New Jersey's Department of Children and Families, Division of Children's System of Care.  Allison Blake, Care Management Organizational Policy Manual - New Jersey Department of Children and Families, 40 (2017).

the "Civil Commitment Court propounded these violations by its continued deference to the Family Part." He asks that we reverse both orders and "provide guidance as the proper procedure in the future."

The State and County Counsel argue H.S.'s adoption, along with his CEPP status having long ago ended, make clear there is no effective relief we can render in these matters and urge us to dismiss the cases as moot. The Law Guardian, although submitting a brief taking no position on the appeals, advised us at oral argument that the choices the judges made in this difficult matter benefitted H.S. and drove the case toward its successful conclusion, the boy's adoption.

Because we have no criticism of the conscientious and thoughtful work of Judge Berdote Byrne and Judge Paparazzo, and the unusual circumstances of these cases make them poor vehicles for the general guidance in future matters appellant seeks, we dismiss the cases as moot.

We add only the following. H.S.'s admission to the child crisis unit in April 2015 was his third in three months. The six-year-old had been physically abused by both his parents. His father was in jail on child endangerment charges. He bit and threatened to kill his foster parents and a therapist, punched one teacher and was spitting on and hitting another. He

tried to kick and break a glass door in the Emergency Room. The psychiatrist at St. Clare's diagnosed him with intermittent explosive disorder, attention deficit hyperactivity disorder and oppositional defiant disorder.

All of the lawyers, the many professionals involved in H.S.'s care and certainly the judges were all acutely aware and concerned about the length of H.S.'s continuation on CEPP status in the children's crisis intervention unit at St. Clare's. All were aware of his dependency on the unit and its potential adverse consequences for his improvement. Judge Berdote Byrne entered an order two weeks after H.S.'s admission that he be placed in the residential program provided by Children's Aid and Family Services by April 24 and if that was not possible, that the Division report on his wait list status every forty-eight hours.

When DCPP advised Judge Berdote Byrne that another child who had been hospitalized in an out-of-state facility for a longer period had "bumped" H.S., delaying his placement in the Children's Aid and Family Services program until August, it also advised if H.S. were moved from St. Clare's, he would "lose priority status and the length of time he will have to wait for appropriate placement will also be extended." The Division

reported the Care Management Organization responsible for services to H.S. advised there were no other placement options.

That development prompted the judge to convene the deputy attorney general representing the State, counsel for H.S.'s parents, the Law Guardian, representatives of the Division and the Department of Children and Families' Division of Children's System of Care, the Division's expert and a lawyer from the Public Defender's Division of Mental Health Advocacy representing H.S. to agree on a plan for H.S. The Division's expert reiterated her opinion, recapped in a subsequent letter to the court, that H.S. required a residential placement for his own safety and that of others, but that he was "so emotionally fragile; placing him in a temporary setting and then moving him would be contraindicated."

That proceeding was apparently not transcribed, but the Law Guardian has provided us her certification averring that "[a]ll of the participants at the meeting objected to H.S. being moved to either another hospital or to a resource home." That obviously included H.S.'s lawyer from the Division of Mental Health Advocacy. The same lawyer the week before, at a hearing before Judge Paparazzo that was transcribed, expressed her strong objection to H.S. being moved to another hospital, specifically Trinitas, saying "I would rather have him wait

here."  It was that consensus that resulted in the consent order of June 26 that H.S. would not be moved from St. Clare's "until further order of the court."

As late as mid-July, H.S.'s treating psychiatrist at St. Clare's was still expressing the same recommendation to Judge Paparazzo, that H.S. should not be moved to an interim placement, that foster care or a community setting was not appropriate and "sending him to a place which doesn't have a structured clinical setting is like setting him up for failure. And re-hospitalizing him."

When representatives of the Division of Children's System of Care advised the judges in August that the Rutgers Children's Transitional Residence might be suitable for H.S., both judges entered orders providing that H.S. should be discharged from St. Clare's upon a bed becoming available at either the Children's Aid and Family Services program or the Rutgers Children's Transitional Residence program on forty-eight hours' notice to both courts and all parties.  As a bed at the Rutgers program did not become available until September, it is clear to us that neither of the orders H.S.'s counsel appeals from in any way prolonged his confinement at St. Clare's.

We categorically disagree with appellant's contention that the Family Part has no role in a case where a child in a pending

guardianship action is on CEPP status and return to the child's parents was "out of the question." Both the Family Part judge and the Civil Commitment judge had distinct roles and well-defined responsibilities here. The judges communicated throughout the process and took pains to ensure that one another and all parties were apprised of proceedings in both courts. As we noted at the outset of this opinion, we find nothing to criticize in their respectful and conscientious discharge of their responsibilities in this difficult matter.

As for guidance for future cases, we note the circumstances here were unusual, and guidance is better provided in the context of a live controversy where the issues are more sharply presented. An application for interlocutory review under R. 2:2-3(b) is, of course, always available to any party when circumstances necessitate emergent relief.

Appeals dismissed as moot.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION